# In the United States Court of Federal Claims

No. 09-648L
Filed: October 18, 2012

\* \* \* \* \* \* \* \*

|  |  |
|---|---|
| GEORGE E. SUTTON, JR., and CATHY L. SUTTON REVOCABLE TRUST 2002, et al., For Themselves and As Representatives of a Class of Similarly Situated Persons, | \* <br> \* Rails-to-Trails; Fifth Amendment <br> Takings Clause; Application of <br> \* State Property Law; California Law; <br> RCFC 56 Cross-motions for <br> \* Summary Judgment; Chain of Title <br> Evidence |

GEORGE E. SUTTON, JR., and CATHY L.        \*
SUTTON REVOCABLE TRUST 2002, et al.,
For Themselves and As Representatives of a  \*    Rails-to-Trails; Fifth Amendment
Class of Similarly Situated Persons,              Takings Clause; Application of
                                            \*    State Property Law; California Law;
    Plaintiffs,                     RCFC 56 Cross-motions for
                                            \*    Summary Judgment; Chain of Title
    v.                              Evidence
                                            \*
THE UNITED STATES OF AMERICA,
                                            \*
    Defendant.
                                            \*

\* \* \* \* \* \* \* \*

*John Robert Sears*, Baker Sterchi Cowden and Rice, LLC, St. Louis, MO, for plaintiffs.

*Brook B. Andrews*, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, for defendant.

## ORDER AND OPINION

**HODGES, Judge.**

    Plaintiffs in this rails-to-trails case are landowners in Sacramento, California. They allege that the United States acquired the use of their property without due compensation by authorizing an easement on their lands for recreational trail use.

    Plaintiffs and defendant filed cross motions for summary judgment on the issue of liability. The parties briefed their arguments on all aspects of defendant's alleged liability, including whether plaintiffs have a cognizable property interest in the land. We grant plaintiffs' motions for summary judgment on liability for the reasons explained below.

## BACKGROUND

Cases in the Court of Appeals for the Federal Circuit have described the Trails Act at some length, and the Act's relationship to takings cases brought in the Court of Federal Claims. *See, e.g.*, *Barclay v. United States*, 443 F.3d 1368, 1370-74 (Fed. Cir. 2006); *Preseault v. United States*, 100 F.3d 1525, 1533, 1537-40 (Fed. Cir. 1996). We have not restated the law established by the Federal Circuit in rails-to-trails cases, except as it applies to the facts here.

Plaintiffs allege a Fifth Amendment taking of their property based on defendant's issuance of a Notice of Interim Trail Use (NITU) affecting a railroad corridor adjacent to their property in Yolo County, California. The railroad-purpose easements obtained from fee owners supporting the corridor were held by Sierra Northern Railway. The strip of land at issue here runs approximately ten miles, between milepost 90.5 in the City of West Sacramento, to a point south of Pumphouse Road in Yolo County, California.

The Surface Transportation Board issued a NITU for the railroad corridor on January 24, 2005, and soon thereafter, the Railroad and the City of West Sacramento reached a trail use agreement for the corridor. Plaintiffs filed this Complaint as a class action in September 2009.

## DISCUSSION

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). The burden to establish the absence of any material fact lies with the moving party, and we resolve factual issues in favor of the non-moving party. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1116 (Fed. Cir. 1985)). After the moving party meets its burden, the burden shifts to the non-moving party to show sufficient evidence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Mere denials, conclusory statements, or evidence that is not significantly probative, will not defeat summary judgment. *Id.* at 248-50. In analyzing cross motions for summary judgment, we evaluate each party's motion by this standard. *Mingus Constructors*, 812 F.2d at 1391 ("[T]he court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.").

The Court of Appeals for the Federal Circuit has provided the following framework for determining whether a taking has occurred in rails-to-trails cases: (1) What entity owned the land involved; e.g., did the railroad acquire an easement or did it obtain fee simple title to the corridor; (2) if the corridor was subject only to an easement, what were the terms of the easement; i.e., was its use limited to railroad purposes, or could it be interpreted to encompass use as a public recreational trail; and (3) if the easement was broad enough to allow a recreational trail, was the easement still in effect when the alleged taking occurred; i.e., otherwise, the property owners may have held fee simple title to the property, unencumbered by the easements. *See Preseault*, 100 F.3d at 1533.

The first prong of the *Preseault* test has eliminated some plaintiffs from this case.  The railroad had acquired its interest in the corridor adjacent to their lands in fee simple.[1]  The parties agree that the railroad's interest in the adjacent lands of the remaining plaintiffs is only an easement.  The parties also agree that easements limited to use for railroad purposes, described in *Presault*'s second prong, do not permit trail use under California law.  However, defendant contends that those plaintiffs have no compensable property interest, either because the NITU did not effect a taking, or because intervening roads cut off their interests in the railroad corridor.

PLAINTIFFS' INTERESTS

Plaintiffs have claims in rails-to-trails cases where the three conditions discussed in *Presault* are met.  That is, claimants must show that the segments of a railroad corridor abutting their lands are not held in fee by the railroad, that the original easement is not broad enough to encompass the use to which the Government would put it, or if it is that broad, plaintiffs must show the lands reverted to their ownership before the taking occurred.  The parties have stipulated that some of the claimants' tracts abut a railroad corridor that is owned in fee by Sierra Northern Railway; they have no rights in the disputed land because the railroad has superior title.  The remaining plaintiffs must show their property rights according to the second and third principles.

*Fee Title in Claimants*

The parties stipulate that the railroad's interest in segments abutting plaintiffs' lands other than those listed in footnote 1, *infra*, are easements only.  Easements affecting those lands are limited to railroad purposes that do not include trail use according to California law.  Eight of these claimants' interests are held in fee simple, subject only to the railroad easements.[2]

---

[1] Where the railroad obtained its interest in land abutting a claimant's property by conveyance of fee simple, that claimant has no interest to have been taken.  Twelve plaintiffs in this action fall into this category.  The parties have stipulated that the railroad owns the lands abutting these plaintiffs in fee and have agreed that these plaintiffs must be dismissed from this lawsuit.  They include by claim number, name, and parcel number: 6. Charles, Cruz R. and Darlene J., 046-230-015; 7. Cole, Sid, 046-362-022; 11. Declaration of trust for the Young J. Paik Family dated 3/26/91, 046-050-033-000 and 046-100-09-1; 16. Favis, Lorena and Jonathan, 046-362-021; 18. Hailu, Abay, 046-351-004; 21. Jones, Tammy D., 046-351-008; 22. Kenneth W. Rudolph and Margaret L. Rudolph Revocable Family Trust, 046-270-31-1; 26. Miller, Christopher L. and Dawn D. 046-210-016; 35. Rodgers, Albert W. and Judi A., 046-230-56-1; 38. Stetson, Steven L., 046-351-006; 41. George E. Sutton, Jr. and Cathy L. Sutton Revocable Trust 2002, 046-270-002; 50. Yokoyama, Cathy and Andrew, 046-230-48-1

[2] These plaintiffs are listed here by claim number, name, and parcel number: 2. Gary L. Anderson 046-210-004; 12. Dorris Family Trust, through trustees, Frank A. Dorris and Connie G. Dorris 046-240-21-1; 14. Wallace E. and Robin A. Enos 046-230-045; 27. Peter G. and

Defendant agrees that these plaintiffs have satisfied the first prong of the *Preseault* test by demonstrating their property interests, and concedes that recreational trail use is beyond the scope of railroad-purpose easements under California law.  However, the Government claims that plaintiffs are not entitled to compensation because the NITU does not authorize or impose interim recreational trail use.[3]

Defendant attempts various means of distinguishing direct Appeals Court precedent to the contrary.  According to defendant, for example, *Preseault* is different from this case because there the state and federal governments were "fully invested" in the effort to create a public trail; here, the Federal Government did not collaborate with state and local entities.  *See Preseault*, 100 F.3d at 1551.  Defendant posits that such collaboration is required to find the Federal Government liable for a taking.

Appeals Court holdings in rails-to-trails cases finding the Government liable for takings do not turn on whether the Government was "fully invested" in development of a trail.  The Federal Government's NITU blocks the reversion of a railroad's easement and gives rise to the taking.  *E.g.*, *Ladd v. United States*, 630 F.3d 1015, 1023-24 (Fed. Cir. 2010) (holding that a taking occurs at the time of the NITU); *Toews v. United States*, 376 F.3d 1371, 1381-82 (Fed. Cir. 2004) ("[W]hen the Federal Government puts into play a series of events which result in a taking of private property, the fact that the Government acts through a state agent does not absolve it from the responsibility, and the consequences, of its actions." (quoting *Preseault*, 100 F.3d at 1551)).

Defendant is responsible not only for its immediate actions but also for the consequences of its actions in the takings arena.  *See Toews*, 376 F.3d at 1382 ("[T]he Federal Government [is] responsible for the immediately foreseeable consequences of its actions.").  This court rejected a similar argument by government counsel recently.  *See Jenkins v. United States*, 102 Fed. Cl. 598, 612-18 (2011) (holding that the Government's taking liability extended to all uses authorized by the

---

Lorrain A. Palamidessi and Ronald Peter and Lynne L. Riviera 046-010-037; 29. Paul O. Davis and Linda N. Davis 1994 Revocable Trust through trustee Linda N. Davis 046-210-011; 33.Riviera Lakes Joint Venture 044-020-10-1 044-020-21-1; 42. The Melvin Edward Seebeck, Jr. and Lois Arlene Seebeck Family Trust, dated May 18, 2000, through trustee Melvin E. Seebeck, Jr. 044-020-016-000; 45. Sarah Jane Vierra, by and through her attorney-in-fact, Karen L. Vierra 044-220-018

[3] This is a curious argument, given Appeals Court rulings in a number of rails-to-trails cases.  Apparently, defendant is contending that the United States' only involvement in the case was to preserve the Railroad's easement by issuing the NITU.  Thus, the NITU is not the point at which a taking occurs, as the Court of Appeals for the Federal Circuit has ruled, but an effort to maintain the status quo.  If so, it follows that no causation exists between the government action and the alleged taking, according to the Government.  Defendant points out that the interim trail user, not the United States, has legal responsibility for the interim trail use.

NITU).  The comprehensive *Jenkins* analysis applies with equal force to this case, and we adopt it here.  Defendant's taking liability arises from the recreational trail use authorized by the NITU.

The eight plaintiffs who hold fee simple title to the land under the railroad corridor abutting their lands are entitled to just compensation for a Fifth Amendment taking of their property, from the date defendant issued the NITU.  *See Preseault*, 100 F.3d at 1533.

*Titles Subject to Deed Construction*

Approximately thirty claimants may have defects in their titles or other hindrances that defendant contends are fatal to their takings claims.[4]  For example, defendant argues that some properties do not abut or underlie the railroad corridor because one of two roads or a drainage easement intervenes between their parcels and the corridor.  The deeds covering these lands are described by reference to a parcel map, to a subdivision map, by metes and bounds extending to the road, or by metes and bounds extending to the railroad corridor.

Defendant asserts that in each case, the language of the deeds controls.  *See Machado v. Southern Pac. Transp. Co.*, 284 Cal. Rptr. 560, 563 (Cal. Ct. App. 1991) ("The cardinal requirement in the construction of deeds and other contracts is that the intention of the parties as gathered from the four corners of the instrument must govern.")  Where a deed references a parcel map, the graphic on the map is controlling of plaintiff's interest.  Where a deed contains a metes and bounds description, the description is determinative of the boundary of plaintiff's property interest, defendant

---

[4] These plaintiffs are listed here by claim number, name, and parcel number: 1. Alley, James and Deborah, 046-240-026; 3. Ben Takeuchi and Eiko I. Takeuchi Revocable Trust, 046-210-005; 4. Raymond Lynn Bice and Jeanne Cargill Bice Rev. Family Trust, 046-280-009; 5. Brar, Gurdev, Shabnam and Germeet, 046-220-016; 8. Conley, Kenneth R. and Nancy M., 046-220-014; 9. Dahlmann, Jr., Peter W., 046-160-027; 10. Dangel, Victor L., 046-160-044; 13. Ed and Rhonda Hensley Living Trust, 046-280-014; 15. Enright, Patrick L. and Rhonda, 046-144-005-000; 17. Gould, Steven K. and Pamela F., 046-230-12-1; 19. Hardev S. Shergill Rev. Trust, Karamjeet Shergill and Sukhwinder Shergill, 046-220-015; 20. Helen G. Drouin Revocable Living Trust, 046-144-020; 23. Lake Washington Partners, LLC, Bryan Turner, 046-020-058; 24. Luna, Richard and Jamesetta, 046-160-028; 25. Madrigal, Joaquin Hugo, 046-144-004-000; 26. Miller, Christoper L. and Dawn D., 046-210-016; 28. Parker, Thomas and Lia, 046-230-111; 30. Pierson, John R. and Carolyn C., 046-130-33-1; 31. Powell, Tiffany, Teresa, and Trudi, 046-210-009; 32. Richard E. Silva Bypass Trust, 046-230-001; 34. Robert G. Reinhardt and Lu-Elma Reinhardt 1993 Rev. Trust, 046-280-007; 36. Madeline M. Rodgers Rev. Trust of 2001, Rodgers Family Credit Trust, 046-230-036; 37. Singh, Ravindra and Laura, 046-144-022; 40. Sturges, Jack S. and Kelly M., 046-240-032-000, 046-240-031-000; 43. Tickler, Erik, 046-160-053; 44. Trust dated July 3, 1990 f/b/o Eugene C. and Dolores M. Parella, Louis Albert Parella, 046-120-13-1; 46. Watt-Turner, LLC, 046-020-056, 046-020-061; 47. Wilson, Timothy M. and Traci S., 046-160-052; 48. Wolfson, David W., 046-160-030-000; 49. Woody, Donald E. and Dorothy L., 046-160-043

contends.

California is among many states that employ a "center line presumption" in deed construction. That is, "[a]n owner of land bounded by a road or street is presumed to own to the center of the way, but the contrary may be shown." Cal. Civil Code § 831. This presumption has been applied to railroad corridors. *See, e.g.*, *Freeman v. Affiliated Prop. Craftsmen*, 72 Cal. Rptr. 357, 364 (Cal. Ct. App. 1968). But where a deed contains a description of property extending a boundary to the edge of a road or railroad corridor, the center line presumption is rebutted. *See, e.g., Warden v. S. Pasadena Realty & Improvement Co.*, 174 P. 26, 27 (Cal. 1918).

The Government argues that California's center line presumption does not apply to plaintiffs' interests in the railroad corridor, and plaintiffs agree. However, the parties disagree on whether this matters in the circumstances. Defendant contends that claimants who have a street between their properties and the railroad corridor could claim an interest to the center of the street, but not to the property underlying the railroad corridor.

Plaintiffs attempt to rely on chain of title evidence, which demonstrates that they own the railroad corridor in fee regardless of conflicting maps or metes and bounds descriptions found in plaintiffs' deeds and without regard to the center line presumption. These claimants have two easements over their land, plaintiffs assert. The first is the railroad easement running along the easternmost edge of plaintiffs' properties, and immediately to the west of the railroad easement is a road or drainage ditch easement. The center line presumption is irrelevant where chain of title evidence demonstrates ownership of the entire width of the railroad corridor, according to plaintiffs.

South River Road runs across one group of plaintiffs' land. Other plaintiffs own land in the Boulevard and Jefferson subdivisions. Antioch Avenue runs through these plaintiffs' properties. A drainage easement runs across one plaintiff's land.

South River Road is a county road in West Sacramento. Plaintiffs assert, and defendant does not dispute, that a search of Yolo County records resulted in no documents establishing South River Road. John Silva, West Sacramento Company (WSC), and H.W. Furlong, some plaintiffs' ancestors in title, owned the land underlying the railroad easement and what became South River Road. In California, when the public uses a strip of land for a public road, the public acquires an easement only in the road by "implied dedication." *People v. Sayig*, 226 P.2d 702, 706 (Cal. Dist. Ct. App. 1951). Hence, South River Road is a public easement over plaintiffs' land.

Lizzie Glide and WSC, other plaintiffs' predecessors in title, owned fee title in the land out of which the Boulevard and Jefferson subdivisions were created. WSC had purchased land from H.W. Furlong, other plaintiffs' predecessor in interest, after the grant of the railroad easement. Glide and WSC dedicated Antioch Avenue and the subdivisions in 1913. According to California law, when the owner of land plats land on a map and designates streets, those streets are deemed public easements for highway purposes. *Elliott v. McIntosh*, 183 P.692, 693 (Cal. Dist. Ct. App. 1919). Thus, Antioch Avenue is an easement over plaintiffs' land.

Glide conveyed an easement to Reclamation District No. 900 for a drainage canal on what is now plaintiff Watt-Turner's land. The deed grants a "right of way and easement to construct, repair and maintain a canal . . . for reclamation purposes." This language clearly grants an easement only in California. *See Toews v. United States*, 53 Fed. Cl. 58, 61 (2002), *aff'd*, 376 F.3d 1371.

Plaintiffs provide an affidavit of the title examiner who researched this property and found no transactions involving the railroad corridor in the records other than plaintiffs' chains of title.[5] Plaintiffs' predecessors in interest owned the land underlying the railroad corridor and the strips of land under the roads or ditch. None of the intermediate conveyances in the chains of title show reservation of fee title or other rights in previous owners and grantors when they conveyed the lots that adjoin the railroad easement. Plaintiffs therefore obtained ownership interests in the railroad right-of-way.

Plaintiffs rely on a California Court of Appeals case for the proposition that chain of title evidence controls in their circumstances. *See Besneatte v. Gourdin*, 21 Cal. Rptr. 2d 82 (Cal. Ct. App. 1993). In that case, homeowners sued their neighbors to quiet title to an abandoned alley that separated their properties. The court examined chain of title evidence dating to the creation of the alley.[6] Despite metes and bounds language in subsequent deeds indicating that the property ended at the alley, the court found that the original landowner had not intended to retain any ownership interest in the strip of land. *Id.* at 84 ("[T]he use of metes and bounds is not determinative of the grantor's intent."). Thus, successors-in-title retained fee simple interests in the alley.

The *Besneatte* case controls an analysis of this group of plaintiffs. Where plaintiffs have produced chain of title evidence showing that their predecessors held fee title to the railroad corridor, and defendant has produced no evidence that the corridor had ever been conveyed to anyone else, plaintiffs have demonstrated a property interest in the corridor; they are entitled to compensation for the Government's placement of a new easement across their lands. Defendant's arguments to the contrary result from a misplacement of applicable burdens. Plaintiffs have shown that available evidence establishes fee title in the group of thirty claimants whose rights are determined by the language of their deeds.

## CONCLUSION

Defendant argues that plaintiffs have not demonstrated their ownership of the railroad corridor sufficiently to claim a taking against the United States. Their chain of title evidence does not prove that someone else does not have an interest in the corridor, defendant asserts. Plaintiffs have submitted

---

[5] The expertise of the title examiner was not questioned.

[6] The court acknowledged but did not apply the center line presumption codified in California. The court stated that "[b]ecause the grantor used a metes and bounds description to convey the property, the Civil Code . . . presumptions do not apply." *Besneatte*, 21 Cal. Rptr. 2d at 84.

the affidavit of a title examiner who searched the records and could find no evidence of anyone other than plaintiffs having an interest in the relevant portions of the corridor. Evidently, defendant expects plaintiffs to demonstrate with certainty that no other entity can claim ownership of the disputed property. Defendant makes these claims without providing its own, contradictory evidence.

Defendant also complains that aspects of plaintiffs' chain of title evidence are illegible. Plaintiffs assert that they have provided the best available copies of the deeds demonstrating their chains of title. Defendant questions their veracity, but does not suggest what the documents might say instead.

Plaintiffs' motions for summary judgment on the issue of whether plaintiffs have a cognizable property interest and for additional liability issues are GRANTED. Defendant's motion is DENIED. All plaintiffs, excepting those abutting land owned by the railroad in fee simple and listed in footnote 1, have a cognizable property interest and are entitled to just compensation. The parties will file a joint status report on or before November 15, stating how they wish to proceed in resolving the matter of just compensation.

<u>s/Robert H. Hodges, Jr.</u>
Robert H. Hodges, Jr.
Judge