# In the United States Court of Federal Claims

No. 09-648

(Filed: March 19, 2015)

|  |  |  |
|---|---|---|
| SUTTON, et al., | ) ) ) | Rails-to-Trails; Class Action; Final |
| Plaintiffs, | ) ) | Approval of Settlement; Final Approval of Class Counsel's Fees |
| v. | ) ) |  |
| THE UNITED STATES, | ) ) |  |
| Defendant. | ) ) |  |

## ORDER GRANTING FINAL APPROVAL TO PARTIES' PROPOSED SETTLEMENT AND CLASS COUNSEL'S MOTION FOR FEES

This is a class action Rails-to-Trails case concerning certain properties in the City of West Sacramento, California and Yolo County, California.  Plaintiffs alleged that the government "took" their property interests without just compensation when it authorized the conversion of the rail corridor to a recreational trail.  The parties have reached a settlement agreement for the appraised fair market value of their property and prejudgment interest.  Pursuant to Rule 23(e) of the Court of Federal Claims ("RCFC"), the parties submitted a joint motion seeking the court's approval of the settlement, ECF No. 119.  Class counsel has also moved for a contingency fee to be paid from settlement fund, ECF No. 118.  For the reasons stated below, the settlement is **APPROVED**, and class counsel's contingency fee arrangement is also **APPROVED**.

1

## I. BACKGROUND

### A. Procedural History

Plaintiffs are 37 landowners owning 41 parcels of property which were burdened by a railroad easement along a 9.27 mile strip of land in Yolo County, California, and allege a Fifth Amendment taking of their property.  Plaintiffs alleged that under California law, the government exceeded the scope of the railroad purpose easement when, after the Sierra Northern Railway ceased using the corridor for its railroad operations, the government transferred its interest in the corridor to the City of West Sacramento for railbanking and interim trail use under Section 8(d) of the National Trails System Act, 16 U.S.C. § 1247(d).  The alleged taking began on January 25, 2005.

On January 30, 2009, the plaintiffs filed their complaint.  During the class certification process, each putative class members was sent a court-approved notice of the terms that would be offered to all plaintiffs.  The notice included an attorneys' fees provision, which stated that plaintiffs would not have to pay any money to attorneys if they wished to be included in the action, but that if class counsel were successful in obtaining an award, class counsel would be

> paid from the greater of (1) a contingency fee equal to 35% of the total recovery or (2) the attorney's fees and litigation expenses – to the extent the Court determines that such fees and expenses are reasonable – may be paid by the United States pursuant to the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4654(c).

See Exhibit A to Joint Proposed Plan for Providing Notice to the Opt-In Class, ECF No. 15; Order Adopting Joint Proposal for Providing Notice to the Opt-In Class, ECF No. 16

(June 4, 2010).  In order to participate in the lawsuit, putative plaintiffs were required to execute and return an entry of appearance attached to the notice.

On October 18, 2012, the court granted the plaintiffs' motion for summary judgment on liability.  ECF No. 78.  Counsel for the parties subsequently entered into settlement discussions.

### B.      The Parties' Motions for Preliminary Approval

Under RCFC 23(e), the "claims, issues, or defense of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  In implementing RCFC 23(e), courts will typically first review the proposed settlement for a preliminary fairness evaluation and direct notice of the settlement to be provided to the class, and then grant final approval of the proposed settlement following notice to the class and a fairness hearing.  Barnes, 89 Fed. Cl. at 670.

Pursuant to RCFC 23(e)(3), the parties submitted a joint motion detailing the terms of the settlement, and proposing a plan to give notice to class members and set a fairness hearing.  In addition, class counsel moved to treat the settlement as a common fund and recover 35% of the principal and interest as a contingency fee.  Under class counsel's proposal, the amount the United States had agreed to pay under the URA would instead be distributed to the plaintiffs.  The government objected to counsel's claim for a contingency fee, arguing that class counsel should be limited to collecting the negotiated fees under the URA.  The parties each submitted a proposed notice to be sent to class members.

### 1. Terms of the Proposed Settlement

In order to reach the settlement, the parties retained an expert real estate appraiser to conduct a joint appraisal process. After the joint appraiser provided his estimations of the fair market value for the interest taken on representative parcels, counsel for both parties reviewed and ultimately accepted the appraiser's conclusions. The parties also agreed to resolve plaintiffs' claim for pre-judgment interest calculated from the date of the alleged taking. Counsel also reached an agreement for reimbursement of costs and attorneys' fees pursuant to the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4654(c) ("URA").

The parties' proposed settlement agreement applies to all claims involved in this opt-in class action. Under the settlement, the total fair market value of the property interest taken from the plaintiffs was $1,493,858. The United States has also agreed to pay pre-judgment interest from the date of the alleged taking, calculating the rate of interest using Moody's AAA bond rates and compound interest. As of December 31, 2014, the parties calculated the amount of interest the United States owed the plaintiffs to be $912,884, for a total of $2,406,742 in principal and interest. However, the interest will continue to accrue until the plaintiffs are paid. The government also agreed to pay plaintiffs $509,128 as reimbursement for attorneys' fees under the URA. In addition, the government agreed to pay $35,919 as reimbursement for in litigation costs. In total, as of December 31, 2014, the government has agreed to pay $2,951,791 to settle this case.

### 2. Class Counsel's Motion for Approval of a Contingency Fee

In their motion for attorneys' fees, class counsel requests the court to approve a contingency fee of 35% of the principal and interest that the government has agreed to pay to settle plaintiffs' claims for just compensation under the Takings Clause. Under that proposal, the statutory attorneys' fees the government agreed to pay under the URA would instead become part of the common fund to be paid to individual plaintiffs according to the individualized damages the parties agreed upon in the settlement.

Under this model, using the rate of interest calculated as of December 31, 2014, counsel would receive $842,360 (35% of $2,406,742 in principal and interest). Counsel would not collect any of the $509,128 designated as reimbursement of attorneys' fees under the URA. Class counsel has therefore asked to recover $333,232 (39.56%) more than the $509,128 the United States agreed to pay as fees under the URA. Class counsel has, however, sought to retain the amount the government agreed to pay as reimbursement for litigation costs. The total pool of funds to be distributed amongst the plaintiffs based upon their individual property interests would be $2,073,510. This number represents 65% of the $2,406,743 principal and interest provided for in the settlement ($1,564,382), plus $509,128 in URA fees. As a result, plaintiffs would end up receiving 13.85% less under class counsel's proposal than they would if counsel were limited to recovering the URA fees. Therefore, plaintiffs would be paying an effective contingency fee of 13.85% of their total recovery.

The government has filed a response to class counsel's motion for fees, ECF No. 120, and a motion for leave to file a statement of position in response to class counsel's

motion for fees, ECF No. 124.  In its motion for leave to file a statement of position regarding class counsel's motion for fees, the government explained that the official position of the United States is to oppose the application of the common fund doctrine in opt-in class actions against the United States where compensation for class counsel available under the URA.  In the alternative, the government has asked the court to perform a lodestar analysis to ensure that any contingent fee class counsel recovers is reasonable.

### C.     Preliminary Approval and Fairness Hearing

On January 16, 2015, this court granted preliminary approval to the proposed settlement and scheduled a public fairness hearing.  See Order Granting Preliminary Approval of Settlement, ECF No. 128 (Jan. 16, 2015).  At the preliminary approval stage of the proceedings, the court needed only to consider whether the settlement had any obvious deficiencies.  See Barnes v. United States, 89 Fed. Cl. 668, 670 (2009).  Upon review of the settlement agreement, the court did not find any collusive activity, preferential treatment, or other deficiencies in the proposed settlement.  As for the contingency fee arrangement, the court found that plaintiffs had been put on notice that counsel would seek to recover such a fee when they opted into this lawsuit.  The court also noted that the Court of Federal Claims has routinely applied the common fund doctrine and allowed counsel to recover a contingency fee in rails-to-trails cases and other opt-in class actions.  In addition, based on the complexity of this case and the number of hours worked, the court found that the total amount that counsel was seeking to recover was not unreasonable on its face.  The court reserved ruling on a final

determination of the reasonableness of the settlement and counsel's fee arrangement until after the fairness hearing so that it could take the plaintiffs' comments or objections, if any, into account.

The court ordered counsel to send a court-approved notice of the settlement to the plaintiffs.  The notice asked each plaintiff to state whether they had any objection either to the terms of the settlement or to counsel's proposed contingency fee arrangement.  On March 3, 2014, class counsel filed a notice of class members' responses to the class action settlement notice, ECF No. 129.  Each of the plaintiffs had returned the notice, indicating that they understood the terms of the settlement and had no objections to the negotiated damages or to class counsel's proposed fee arrangement.

On March 11, 2015, the court held a telephonic fairness hearing on the parties' joint motion for preliminary approval of the parties' proposed class action settlement and class counsel's motion for fees.  Although all of the plaintiffs had agreed to the settlement and fee arrangement, the defendant reiterated its objection to class counsel's proposed fee arrangement.  Defendant noted that a case dealing with the same question regarding a contingency fee under the common fund doctrine, <u>Haggart v. United States</u>, 116 Fed. Cl. 131 (2014), is currently pending before the Federal Circuit.  However, the government agreed that the pendency of that case should not delay resolution of this case.

II. **DISCUSSION**
   A. **The Settlement Agreement**

The court may approve a proposed settlement in a class action case "only after a hearing and on finding that it is fair, reasonable, and adequate." RCFC 23(e); <u>see also</u>

7

Moore v. United States, 63 Fed. Cl. 781, 783 (2005).  The court has the discretion to accept or reject a proposed settlement, but it may not alter the proposed settlement, nor may it decide the merits of the case or resolve unsettled legal questions.  Adams v. United States, 107 Fed. Cl. 74, 75-76 (2012) (citing Evans v. Jeff D., 475 U.S. 717, 726-27 (1986); Nat'l Treasury Emps. Union v. United States, 54 Fed. Cl. 791, 797 (2002)).

There is no definitive list of factors that the court must apply in considering a class action settlement.  Raulerson v. United States, 108 Fed. Cl. 675, 677 (2013). However, in determining whether a settlement agreement is "fair, reasonable, and adequate," courts have found the following factors instructive: (1) the relative strengths of plaintiffs' case compared to the proposed settlement; (2) the recommendation of the counsel for the class regarding the proposed settlement, taking into account the adequacy of class counsel's representation of the class; (3) the reaction of the class members to the proposed settlement, taking into account the adequacy of notice to the class members of the settlement terms; (4) the fairness of the settlement to the entire class; (5) the fairness of the provision for attorney fees; and (6) the ability of the defendants to withstand a greater judgment, taking into account whether the defendant is a governmental actor or private entity.  Sabo v. United States, 102 Fed. Cl. 619, 627 (2011) (citation omitted).

In this case, after the plaintiffs' motion for summary judgment on liability, the parties engaged the services of a third-party appraiser in order to assess the square-foot value of the property interest allegedly taken from each plaintiff.  This method helped ensure that the process would be fair, with no class member being given special preference over any other.  Each class member will receive the fair market value of his or

her individual property interest based on this common appraisal process. The agreement does not single out or reward one class member over another. As such, the court finds that the process was both fair to the individual class members and to the class as a whole.

In addition, despite ample opportunity, no plaintiff had raised any objections to the terms of the settlement. Class counsel reviewed the terms of the proposed class action settlement with the class representatives who the court designated to protect the interest of the class, in accordance with RCFC 23(a)(4). The class representatives determined that the proposed settlement is in the best interests of the class. See Joint Mot. at 9. During the settlement process, the plaintiffs were given an opportunity to meet with counsel to address any questions or concerns they may have had. Plaintiffs were also given the opportunity to submit written objections or participate in a telephonic fairness hearing, but each plaintiff declined that opportunity.

The court further finds that the statutory attorneys' fees and costs agreed to under the settlement are reasonable. The URA provides that plaintiffs may be reimbursed for "reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred" during the litigation, as approved by the Attorney General. 42 U.S.C. § 4654(c). In evaluating such awards, the Attorney General's opinion is entitled to deference, and the court does not conduct the same in-depth analysis as it would if it were rendering the award. Moore, 63 Fed. Cl. at 785 n.6. In this case court finds that the amount of attorneys' fees and costs to be paid to the plaintiffs are reasonable.

For all of these reasons, the court holds that the parties' proposed settlement agreement is fair, reasonable, and adequate and warrants approval.

### B.     The Contingency Arrangement

For the reasons stated below, court finds that class counsel's proposed contingency fee arrangement in this case is both lawful and reasonable.  Therefore, the court will approve class counsel's motion for fees.

#### 1.     Class Counsel's proposed contingency agreement is lawful.

After considering the record and relevant case law, the court finds that the contingency arrangement class counsel has proposed is lawful.  Under RCFC 23(h), the court may award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Haggart, 116 Fed. Cl. at 143 (quoting RCFC 23(h)).  In this case, class counsel has asked this court to find that a common fund exists, and to allow them to recover a percentage of that fund.  "Recovery under the common fund doctrine stems from the equitable power of a court to create the obligation for attorney fees against benefits some received as a result of the advocacy of another."  Knight v. United States, 982 F.2d 1573, 1580 (Fed. Cir. 1993).

Class counsel argues that the fact that URA fees are available does not preclude them from recovering a contingency fee, when, as in this case, the plaintiffs entered this litigation understanding that class counsel would recover a contingency fee and have no objection to the fee.  As class counsel notes, when the plaintiffs opted in this case and agreed to allow class counsel to represent them, they were on notice that class counsel intended to recover a percentage of the total recovery and each plaintiff opted into this

10

lawsuit with an understanding of those terms. Mot. for Fees 3-4. When each class member opted in to the litigation, he or she was provided with a court-approved notice stating that, if plaintiffs prevailed or reached a settlement, class counsel would be recover either a contingency fee of 35% of the total recovery or attorneys' fees pursuant to the URA, whichever amount was greater. Id. at 4. Therefore, class counsel argues, notwithstanding the fact that the plaintiffs did not all sign an express retention agreement, they all entered the lawsuit with the understanding that class counsel could recover such a fee if they were successful. Counsel argues that they are actually asking for a smaller contingency fee than plaintiffs agreed to pay, because they are only requesting 35% of principal and interest rather than 35% of the total recovery. Id. at 10. Class counsel notes that their contingency fee request is consistent with other rails-to-trails cases, which have routinely treated settlements of this nature as "common funds." See id. at 15-20 (citations omitted).

  The government argues no that common fund was created in this case, and therefore the common fund doctrine should not apply. The government argues that, notwithstanding case law to the contrary, the equitable reasoning underlying a court's award of a contingency fee (specifically, preventing unjust enrichment of class members who would benefit from the litigation without bearing any of its costs or risks) does not apply when each class member must agree to join the litigation at the outset. Therefore, the government argues, the court should not grant a contingent fee and should limit class counsel to recovering the fees the government agreed to pay under the URA. In the

alternative, the government has asked the court to perform a lodestar analysis to ensure that any contingent fee class counsel recovers is reasonable.

The court agrees with class counsel. The Supreme Court has found that an attorney may recover under a contingency fee agreement even if the defendant is statutorily obligated to pay attorneys' fees. See Gisbrecht v. Barnhart, 535 U.S. 789, 806 (2002); Venegas v. Mitchell, 495 U.S. 82, 87-88 (1990). Courts in similar cases have awarded contingency fees to class counsel notwithstanding the availability statutory fees, so long as the total fee is reasonable. See Moore, 63 Fed. Cl. at 785-86 ("A request for some percentage of the total award is not inappropriate, despite the fact that the parties have settled the matter of statutory fees and that the resulting fee would be higher than that received under the fee-shifting statute." (citing Staton v. Boeing Co., 327 F.3d 938, 966 (9th Cir. 2003))). In this case, every plaintiff has signed two documents, one at the outset of the litigation (agreeing to participate in the litigation) and one at the end (stating that they have no objection to the contingency arrangement), indicating that they approve of the plan to pay a percentage of their recovery in attorneys' fees, notwithstanding the fact that statutory fees are available. As the government acknowledges, cases in the Court of Federal Claims have routinely applied the common fund doctrine and allowed counsel to recover a contingency fee in rails-to-trails cases and other opt-in class actions when the plaintiffs signed similar agreements. See, e.g., Haggart, 116 Fed Cl. at 148-49; Raulerson, 108 Fed. Cl. at 678-79; Voth, 108 Fed. Cl. at 105. Unless this court is given contrary instructions by the circuit, there is no reason not to decide this case in alignment with the other Court of Claims cases addressing this precise issue.

## 2. The contingency fee is substantively reasonable

Class counsel argues that the percentage of the common fund they seek to recover (35% of principle and interest) is within the acceptable range for this type of case, and that the total amount of the fees they seek to recover is substantively reasonable. The court agrees with class counsel.[1]

Counsel's request for a 35% fee is within the acceptable range for a contingency fee in a rails-to-trail case. See, e.g., Voth, 108 Fed. Cl. at 106 (approving a 40% contingency fee); Bishop v. United States, No. 10–594L, 2013 WL 4505991, at *5 (Fed.Cl. Aug. 19, 2013) (approving 33% fee); Moore, 63 Fed. Cl. at 787 (noting that though "40% is within the acceptable range, awards more typically range between 20% to 30% of the total fund, with 50% being the upper limit." (citations omitted)).

Further, the court finds that the total amount that class counsel would recover as a contingency fee is reasonable taking into account the quality of counsel, the fee that

---

[1] Unlike fee shifting statutes, which may require the application of a particular lodestar method to determine the amount of attorneys' fees, the court is not "bound by any one methodology," but must take into consideration the individual circumstances of the case to ensure that the overall rate is reasonable. Moore, 63 Fed. Cl. at 786 (citing Camden I Condo. Ass'n v. Dunkle, 946 F.2d 768, 774 (11th Cir. 1991)). Factors to consider may include
    (1) the quality of counsel;
    (2) the complexity and duration of the litigation;
    (3) the risk of nonrecovery;
    (4) the fee that likely would have been negotiated between private parties in similar cases;
    (5) any class members' objections to the settlement terms or fees requested by class counsel;
    (6) the percentage applied in other class actions; and
    (7) the size of the award.
Haggart, 116 Fed. Cl. at 143; see also Moore, 63 Fed. Cl. at 787 (citing Manual for Complex Litigation (Fourth) § 14.121, p. 192.)). Therefore, the court disagrees with the government that a more involved lodestar determination is required in this case.

likely would have been negotiated between private parties in similar cases, the complexity and duration of litigation, and the percentage applied in other class actions. This case has been in litigation for six years.  Counsel has provided documentation of the hours logged during the various phases of this litigation, and attested that in total, they have worked approximately 1500 hours on this case as of the time the settlement was finalized.  They have since performed additional work in order to secure preliminary and final approval of the settlement from this court.  Counsel has obtained a favorable result for their clients, both at the summary judgment stage and settlement negotiation stages of the litigation.

For all the reasons stated above, the court finds that a 35% contingency fee and a total award of approximately $842,360 is reasonable and should be approved.

### III.   CONCLUSION

For the foregoing reasons, the parties' proposed settlement agreement, including the attorneys' fees and costs agreed to as authorized by the URA, is **APPROVED.** Plaintiffs' contingency fee agreement is also **APPROVED**.  The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

s/Nancy B. Firestone  
NANCY B. FIRESTONE  
Judge